| | |
|---|---|
| THE CINCINNATI INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) Case No. 1:25-cv-53 ) ) Judge Travis R. McDonough |
| v. | ) ) Magistrate Judge Michael J. Dumitru |
| FIRST CENTENARY UNITED METHODIST CHURCH, | ) ) ) |
| Defendant. | ) ) |

# MEMORANDUM AND ORDER

Before the Court are cross-motions for summary judgment filed by Plaintiff The Cincinnati Insurance Company ("Cincinnati Insurance") and Defendant First Centenary United Methodist Church ("First Centenary"). (Docs. 20, 22.) For the following reasons, the Court will: (1) **DENY** Cincinnati Insurance's motion for summary judgment (Doc. 20); and (2) **GRANT** First Centenary's motion for summary judgment (Doc. 22).

## I. BACKGROUND

### A. The Insurance Policies

Cincinnati Insurance insured First Centenary under policy number EPP 0374167 ("Policy") for the period of March 7, 2017, to March 7, 2018. (Doc. 1-4, at 1.) Relevant to this suit, the Policy provides Teacher's Professional Liability coverage ("Teacher's Coverage").[1]

---

[1] The Policy also provides Commercial General Liability coverage, Commercial Umbrella Liability coverage, Clergy/Counselor's Professional Umbrella Liability coverage, and Religious Institutions Wrongful Acts coverage. (Doc. 1-4, at 1.) However, the parties agree that those

(*Id.*, at 1, 87.) The Teacher's Coverage provides coverage for injuries arising from either a single act or series of acts while rendering "professional services[.]" (*See* Doc. 1-4, at 89, 94; Doc. 21, at 9–10; Doc. 23, at 8.) The Policy defines "professional services" as "those activities and services which are directly related to the instruction and supervision of students and that only a certified teacher, or person otherwise legally eligible to teach, in the jurisdiction where you operate can provide." (Doc. 1-4, at 95; Doc. 21, at 10; Doc. 23, at 8.)

The Teacher's Coverage has twenty exclusions including an exclusion for pollutants. (Doc. 1-4, at 91; Doc. 21, at 13–14; Doc. 23, at 21). The "Pollutant" exclusion includes "[i]njur[ies] arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of 'pollutants' at any time." (Doc. 1-4, at 91.) Pollutant is defined as:

> any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether the injury or damage is caused directly or indirectly by the "pollutants" and whether:
>
> a. The insured is regularly or otherwise engaged in activities which taint or degrade the environment; or
>
> b. The insured uses, generates or produces the "pollutant".

(*Id.* at 36, 75, 85, 94, 123.) Various coverages in the Policy contain a lead exclusion, which excludes liability from "[l]ead in any form or transmitted in any manner" (*id.* at 81) or liability "arising out of, resulting from, or in any way caused by or contributing to the actual, alleged or

---

coverages are not triggered by the allegations in the underlying state court suit. (Docs. 23, at 7; 24, at 2.)

threatened ingestion, inhalation, absorption of, exposure to or presence of lead in any form - emanating from any source" (*id.* at 57, 128). Although there are lead-liability exclusions throughout the Policy, neither the lead-liability exclusions nor the Teacher's Coverage explicitly state that the lead-liability exclusion applies to the Teacher's Coverage. (*See id.* at 57, 80, 88–95, 128[2].)

B. **The Underlying Action**

On January 9, 2025, John Doe 1 and Jane Doe 1, parents of John Doe 2, filed a suit against First Centenary in the Circuit Court of Hamilton County, Tennessee (the "Doe Action"). (Doc. 1-5.) John Doe 2 was enrolled in the infant room at First Centenary's Children's Enrichment Center ("CEC"). (*Id.* at 2–3; Doc. 21, at 2; Doc. 23, at 3.) There were five children, including John Doe 2, enrolled in the infant room. (Doc. 1-5, at 3.) The Doe Action alleges that a CEC staff member purchased mirrors painted with lead paint and brought them into the infant room as toys for the infants. (*Id.*; Doc. 21, at 2; Doc. 23, at 3.) The underlying complaint alleges that, at their one-year old doctor appointments, all five children had blood lead levels ranging from two to six and a half times the maximum acceptable level. (Doc. 1-5, at 3–6.) The Doe Action further alleges that the mirrors were the cause of the elevated blood lead levels, and that First Centenary was negligent and violated state-imposed duties related to the lead exposure. (*See* Doc. 1-5, at 3–11.)

---

[2] Under the Policy, the Professional Umbrella Liability coverage, which has a lead-liability exclusion, also has a teacher's professional services exclusion so that activities and services that would fall under the Teacher's Coverage is not covered in the Professional Umbrella Liability coverage. (*See* Doc. 1-4, at 102.)

3

C. **The Present Action**

Cincinnati Insurance initiated this suit on February 18, 2025, seeking a declaratory judgment that: (1) First Centenary's Policies do not provide coverage for the allegations in the Doe Action; and (2) it has no duty to defend or indemnify First Centenary. (Doc. 1, at 15–16.) Both parties have filed motions for summary judgment (Docs. 20, 22), and both motions are now ripe for the Court's review.

II. **STANDARD OF LAW**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. *Celotex*, 477 U.S. at 325. Once the movant has discharged this burden, the nonmoving party can no longer rest upon the allegations in the pleadings; rather, it must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).

At summary judgment, the Court may not weigh the evidence; its role is limited to

4

determining whether the record contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the non-movant based on the record. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If not, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323.

The standard of review when parties file cross-motions for summary judgment is the same as when only one party moves for summary judgment. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). When there are cross-motions for summary judgment, the court must "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id*. In considering cross motions for summary judgment, the court is "not require[d] . . . to rule that no fact issue exists." *Begnaud v. White*, 170 F.2d 323, 327 (6th Cir. 1948).

### III.    ANALYSIS

Cincinnati Insurance argues that the terms of the Teacher's Coverage do not provide insurance coverage for the Doe Action. (*See generally* Doc. 21.) Under Tennessee law, the interpretation of insurance contracts is governed by the same rules of construction used to interpret other contracts. *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990). Insurance contracts "must be interpreted fairly and reasonably, giving the language its usual and ordinary meaning." *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 768 (Tenn. 2006) (citation omitted). "Insurance policies should be construed as a whole in a reasonable and logical manner." *Standard Fire Ins. Co. v. Chester O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998) (citation omitted). "[C]ourts interpreting insurance contracts must look to the

5

contract as a whole." *ShoLodge, Inc. v. Travelers Indem. Co. of Ill.*, 168 F.3d 256, 259 (6th Cir. 1999) (citation omitted). "Where there is no ambiguity, terms should be given their ordinary meaning, and neither party ought to be favored." *Id.* (citing *In re Estate of Clement,* 414 S.W.2d 644, 646 (Tenn. 1967)). "Where the terms are ambiguous, however, such ambiguities are to be construed against the drafter." *Id.* (citing *Grand Valley Lakes Property Owners Ass'n, Inc. v. Cary*, 897 S.W.2d 262, 267 (Tenn. Ct. App. 1994)).

### A. Duty to Defend

Cincinnati Insurance argues that the alleged injuries of John Doe 2 are not covered by the Teacher's Coverage because (1) the injuries did not arise out of activities that are "directly related to the instruction and supervision of students[,]" and (2) did not stem from an act that a "certified teacher or person eligible to teach can provide[.]" (Doc. 21, at 9–12.)

Under Tennessee law, whether a duty to defend arises depends solely on the allegations contained in the underlying complaint. *St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994). Accordingly, insurers have a duty to defend when the underlying complaint alleges damages that are within the risk covered by the insurance contract and for which there is a potential basis for recovery. *Id.* "[T]he duty to defend is broader than the duty to pay or indemnify[.]" *Id.* (citation omitted). "If even one of the allegations is covered by the policy, the insurer has a duty to defend, irrespective of the number of allegations that may be excluded by the policy." *Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996) (citation omitted). However, if it is plain from the face of the underlying complaint that the allegations fail to state facts that bring the case within, or potentially within, the policy, then no duty to defend exists. *Id.* "Any doubt as to whether the claimant has stated a cause of action within the coverage of the policy is resolved in favor of the insured." *Travelers*

6

*Indem. Co. of Am. v. Moore & Assocs., Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007) (citation omitted). "Comparing the injuries alleged in the complaint and the policy at issue is the starting point, and often the ending point, in analyzing an insurer's duty to defend." *Swafford v. Forestry Mut. Ins. Co.*, 68 F. Supp. 3d 796, 798 (E.D. Tenn. 2014).  !

### 1. Instruction and Supervision of Students

Cincinnati Insurance argues that the alleged injuries John Doe 2 suffered did not arise out of activities that are "directly related to the instruction and supervision of students." (*See* Doc. 21, at, 10–11.)

First, Cincinnati Insurance argues that providing a child a mirror is "not remotely instructional[.]" (*Id.*) However, the Tennessee Regulations regarding child care centers require them to provide educational experiences for children, and those experiences include activities like "manipulating toys." *See* Tenn. Comp. R. & Regs. 1240-04-01-.05(1) (2017). Although playing with toys, like mirrors, may not be educational for older individuals, for young children, such exploration of the world around them helps their development and is instructional.

Next, Cincinnati Insurance argues that John Doe 2's injuries did not arise from First Centenary's failure to render instruction, which would trigger the Teacher's Coverage, because the CEC "is not designed to provide constant instruction . . . ." (*See* Doc. 21, at, 10–11.) Cincinnati Insurance's basis for this argument is that the CEC's class schedule included activities like "free play, snack times, and outside play," and these activities are not related to instruction at all. (*Id.*) The Court finds this argument implausible. Nowhere in the Policy does it require "constant" instruction for the Teacher's Coverage to apply. (*See generally* Doc. 1-4.) Also, if the Teacher's Coverage required "constant" supervision for the coverage to apply, every class that implemented the childhood rite of recess would be excluded by the Teacher's Coverage—an

7

absurd result and one contrary to Tennessee's regulations for child care centers (*see* Tenn. Comp. R. & Regs. 1240-04-01-.05(1)(f) (2017) (requiring "outdoor play each day")).

Cincinnati Insurance also argues that the Teacher's Coverage applies to acts directly related to "students" and that because of John Doe's young age he cannot be considered a "student." (Doc. 24, at 4.) Neither the Policy nor the Tennessee Regulations for child care centers provide a definition for the term "student." (*See generally* Doc. 1-4); *see* Tenn. Comp. R. & Regs. 1240-04-01-.01 (2017). The ordinary meaning of the word "student" is a person engaged in learning and does not have an age qualifier. As discussed above, child care centers are required to provide educational experiences for children, including infants, which would make those children students. Also, it is notable that Cincinnati Insurance even used the term "students" to refer to John Doe 2 and the other infants in his class in its motion for summary judgment. (Doc. 21, at 13.)

Accordingly, the allegations in the Doe Action trigger Cincinnati Insurance's duty to defend under the Teacher Coverage because the complaint alleges injuries that are directly related to instruction and supervision of students.

### 2. Person Eligible to Teach

Cincinnati Insurance next argues that the Teacher's Coverage does not apply to the Doe Action because the coverage "requires that the injurious act be the kind that 'only' a certified teacher or person eligible to teach can provide[,]" and people other than someone eligible to teach could give a child a mirror. (Doc. 21, at 11.)

The Tennessee Regulations set the qualifications required for individuals who can care for children at a child care center. *See* Tenn. Comp. R. & Regs. 1240-04-01-.03(1) (2017). People who do not meet these qualifications are not allowed to "be present with the children."

8

*Id.* Therefore, not anyone could have given a child a mirror at a child care center because not everyone is allowed to be present with the children. Also, as discussed above, the Tennessee Regulations consider "manipulating toys" an activity that is a developmentally appropriate learning experience. *See* Tenn. Comp. R. & Regs. 1240-04-01-.05(1) (2017). The individuals qualified to be with the children at child care centers are also required to provide learning experiences, which include allowing children to manipulate toys. Since the CEC staff allegedly provided the children in the class with the lead mirrors, the alleged injuries could have only been caused by someone eligible to teach. Accordingly, there is a potential basis of recovery from the Teacher's Coverage and therefore, Cincinnati Insurance has a duty to defend.

      **B.**      **Exclusion Under the Policy**

Cincinnati Insurance next argues that even if the Teacher's Coverage applies to the Doe Action, the pollutant exclusion includes lead and, therefore, bars coverage. (*See* Doc. 21, at 13.) First Centenary contends that the pollutant exclusion does not include lead because the Policy contains lead exclusions and to interpret the pollutant exclusion to include lead would make the lead exclusion superfluous. (*See* Doc. 23, at 21–24.)

An insuring agreement "sets the outer limits of an insurer's contractual liability[,]" and the exclusions in that agreement "define and shape the scope of coverage." *Chester O'Donley & Assocs., Inc.*, 972 S.W.2d at 7. "Each exclusion reduces coverage and operates independently with reference to the insuring agreement." *Id.* at 8 (citations omitted). When construing exclusions, a Court should not construe the exclusions "broadly in favor of the insurer" or "narrowly as to defeat their intended purpose." *Id.*

There are lead exclusions throughout the Policy, which apply to the Commercial General Liability coverage, the Religious Institutions Wrongful Acts coverage, the Commercial Umbrella

9

Liability coverage, and the Professional Umbrella Liability coverage.[3]  (Doc. 1-4, at 57, 81, 128.)  Notably, there is no lead exclusion in the Teacher's Coverage.  (*See id.* at 89–91.)  Cincinnati Insurance argues that the Court should interpret the pollutant exclusion in the Teacher's Coverage broadly to include lead because it is recognized as "harmful and toxic."  (Doc. 21, at 14.)

First, taking into consideration the Policy as a whole, the four coverages that include a lead exclusion also contain a pollutant exclusion.  (Doc. 1-4, at 19, 26, 57, 81, 103, 110–11, 128.)  To interpret the Policy's pollutant exclusions to include lead would make the lead exclusions superfluous in the other coverages, rendering them meaningless.  By the same token, if the pollutant exclusion is to be read so broadly as to cover all "harmful and toxic" substances, the Teacher's Coverage's asbestos exclusion would be superfluous because, like lead, asbestos is considered a "harmful and toxic" substance.

Furthermore, the Policy's pollutant exclusion states it applies to injuries that arise from the "discharge, dispersal, seepage, migration, release, escape or emission of pollutants," (*id.* at 91), but these verbs are not how one would describe the ingestion of lead—the alleged act in the Doe Action.  However, the verbs used in the lead exclusions for the other coverages in the Policy are different than those in the pollutant exclusion and better describe how injuries from lead could occur—"ingestion, inhalation, absorption of, exposure to or presence of lead in any form . . . ."  (*Id.* at 57, 128.)

To include lead in the Teacher's Coverage pollutant exclusion would construe the exclusion too broadly in favor of the insurer.  The pollutant exclusion does not include lead, and

---

[3] The Professional Umbrella Liability coverage has a teacher's professional service exclusion, and thus, is a coverage different from the Teacher's Coverage.  (*See* Doc. 1-4, at 102.)

10

Cincinnati Insurance has a duty to defend First Centenary in the Doe Action. Accordingly, the Court will **DENY** Cincinnati Insurance's motion for a declaratory judgment that it does not have a duty to defend First Centenary and will **GRANT** First Centenary's motion for a declaratory judgment that Cincinnati Insurance has a duty to defend First Centenary in the Doe Action.

### C. Duty to Indemnify

Cincinnati Insurance seeks judgment that it has no duty to indemnify First Centenary. (*See* Docs. 21, at 4; 24, at 14–15.) First Centenary argues that it is not appropriate at the summary judgment stage to declare Cincinnati Insurance has a duty to indemnify. (*See* Doc. 23, at 6–7.) The duty to indemnify depends upon "the true facts" of the underlying litigation, and it is therefore "not uncommon that an insurer will have a duty to defend based on the allegations in the complaint, yet have no subsequent duty to indemnify the insured." *Torpoco*, 879 S.W.2d at 835 (quoting *Am. Policyholders' Ins. Co. v. Cumberland Cold Storage Co.*, 373 A.2d 247 (Me. 1977)). At this stage of this declaratory-judgment action, the true facts of the Doe Action are not available, and the Court cannot determine whether Cincinnati Insurance has a duty to indemnify First Centenary. Accordingly, the Court will **DENY** Cincinnati Insurance's motion for a declaratory judgment that it is not required to indemnify First Centenary in connection with the Doe Action.

### IV. CONCLUSION

For the reasons stated herein, Cincinnati Insurance's motion for summary judgment (Doc. 20) is **DENIED**. First Centenary's motion for summary judgment (Doc. 22) is **GRANTED** and Cincinnati Insurance has a duty to defend First Centenary in the Doe Action.

**SO ORDERED.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH
UNITED STATES DISTRICT JUDGE**

12